# BOIES, SCHILLER & FLEXNER LLP

575 LEXINGTON AVENUE • 7TH FLOOR • NEW YORK, NY 10022 • PH. 212.446.2300 • FAX 212.446.2350

November 24, 2014

**BY ECF**

Hon. Shira A. Scheindlin
United States District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *Wultz v. Bank of China Ltd.*, No. 1:14-mc-00246 (SAS);

Dear Judge Scheindlin:

    We represent Plaintiffs in the above-referenced matter. We write in response to the November 12, 2014 letter of non-party movant the Government of Israel ("Israel"), regarding the voluntary deposition of Uzi Shaya. (Dkt.# 15).[1]

    Background. On July 21, 2014, the Court granted Israel's motion to quash Plaintiffs' subpoena to compel the testimony of Mr. Shaya, finding that Israel had properly invoked foreign testimonial immunity as to information regarding acts taken or knowledge obtained in Shaya's capacity as a government official. The Court, however, expressly allowed that "[t]o the extent that Shaya wishes to testify voluntarily as to information unrelated to acts taken or knowledge obtained in his official capacity, the deposition is permitted." July 21, 2014 Order, at 24. Dkt.# 9. Mr. Shaya appeared in Court on October 21, 2014 and Your Honor affirmed that "if you [Mr. Shaya] would have information that was not obtained in your official role and you voluntarily agree to be deposed with respect to such knowledge, that's fine." 10/21/14 Hr'g Tr. at 4:24-5:1. On October 27, 2014, Plaintiffs informed counsel to Israel for the second time in recent months that Mr. Shaya and Plaintiffs intended to proceed with Mr. Shaya's voluntary deposition and asked for dates to permit Israel to participate, so that Israel might assert any appropriate privileges, consistent with the procedures for Mr. Shaya's voluntary deposition set forth in the Court's Order dated November 15, 2013. (1:11-cv-1266, Dkt.# 394).

    Analysis. As an initial matter, Plaintiffs have reviewed Israel's letter, but are unclear what specific relief Israel is requesting. While Israel states that "the deposition [of Mr. Shaya] would be futile and should not proceed" (Bellinger Ltr. at 2), it does not explicitly seek a protective order or move to intervene in the main action (1:11-cv-1266). Similarly, Israel requests that the Court "decide two unresolved legal issues raised in Israel's motion to quash" (*id.*), but does not appear to be seeking reconsideration of Your Honor's order, which expressly permits Mr. Shaya's deposition to proceed in the manner contemplated by Plaintiffs. In sum, Israel appears to be requesting that the voluntary deposition of Mr. Shaya be foreclosed because

---

[1] Plaintiffs note that Israel filed its letter on the docket of the miscellaneous action regarding Israel's Motion to Quash Plaintiffs' subpoena of Mr. Shaya, which the Court ordered closed on September 12, 2014. Dkt.# 12. All docket citations are to that miscellaneous action unless otherwise noted.

Hon. Shira A. Scheindlin
November 24, 2014
Page 2

Israel believes it will not be fruitful—an improper basis upon which to seek relief and an argument the Court roundly rejected recently in the context of Plaintiffs' subpoena of Simon Cohen & Sons.

Israel's suggestion that the Court lacks jurisdiction is tangential and misleading. The Court's July 21, 2014 Order quashed Plaintiffs' subpoena to compel the testimony of Uzi Shaya (Dkt.# 9), and the *Moriah* Plaintiffs have since appealed Dkt. # 13. That Order explicitly carved out the question of any voluntary deposition by Shaya regarding non-governmental information. *Id.* at 24; *see also* August 7, 2014 Order Denying Plaintiffs' Motion for Reconsideration, at 6 ("[I]f Shaya wishes to testify voluntarily as to information unrelated to acts taken or knowledge obtained in his official capacity, he may do so.") (Dkt.# 11). If Israel took issue with the Court's ruling regarding a voluntary deposition of Mr. Shaya, Israel should have cross-appealed to the Second Circuit, rather than sit and wait for Plaintiffs to move forward with a deposition that was expressly authorized by two Orders of this Court. This is especially the case because Israel was on notice at the time of the July 21, 2014 Order that Plaintiffs and Mr. Shaya intended to proceed with Mr. Shaya's voluntary deposition. As it is, Israel appears to be trying to have it both ways, seeking to dismiss *Moriah* Plaintiffs' appeal at the Second Circuit, while arguing that the pending appeal should prevent any impending voluntary deposition.

To the extent Israel seeks to revive its attempts to invoke the "foreign state secrets privilege," that request is without merit. No U.S. Court has ever permitted a foreign sovereign to invoke the state secrets privilege, and even were that not the case, Israel's attempt to invoke the privilege is facially defective under Second Circuit precedent. Israel has filed one conclusory and defective declaration,[2] and has not provided sufficient information (*in camera* or otherwise) describing with any particularity the purported state secrets at issue. As such, Israel has provided no means for the court to evaluate the "facts at issue" in its national security claims other than the bald assertions of a former government official. *See Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546-47 (2d Cir. 1991) ("A court before which the [state secrets] privilege is asserted must assess the validity of the claim of privilege, satisfying itself that there is a reasonable danger that disclosure of the particular facts in litigation will jeopardize national security."); *Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1203 (9th Cir. 2007) ("[W]e read *Reynolds* as requiring an in camera review of the Sealed Document in these circumstances . . . because of [the plaintiff's] admittedly substantial need for the document to establish its case.") (citing *U.S. v. Reynolds*, 345 U.S. 1 (1953)); *see also Kerr v. U.S. Dist. Court*, 426 U.S. 394, 405-406 (1976) ("[T]his Court has long held the view that *in camera* review is a highly appropriate and useful means of dealing with claims of governmental privilege.").[3] If Israel is attempting an

---

[2] As detailed in Plaintiffs' Opposition to Israel's Motion to Quash (1:13-mc-1282 (D.D.C.), Dkt. #22), the declaration submitted by Israel was neither an affidavit sworn under penalty of perjury nor a valid declaration pursuant to 28 U.S.C. § 1746.

[3] Among other functions, *in camera* review ensures that Court is able to satisfy itself that the executive branch abides by its own rules for invoking privilege, and is not invoking the state secrets privilege for an improper purpose, such as to conceal information that is merely embarrassing or

BOIES, SCHILLER & FLEXNER LLP

Hon. Shira A. Scheindlin
November 24, 2014
Page 3

unprecedented invocation of a U.S. Government privilege in U.S. courts, it should at a minimum be required to follow the procedures established by U.S. Courts for invoking that privilege.

Ultimately, Israel appears to be suggesting—without stating—that any testimony by Mr. Shaya should be barred because of purported new-found conflicts with Israeli law, and that Israel intends to sanction Mr. Shaya criminally if he testifies at all, including in accordance with this Court's Order. *See* Bellinger Ltr. at 2 (Even in connection with the limited, voluntary deposition authorized by the Court, "Israel maintains that such information would implicate foreign state secrets and Israel's penal laws"). That position is consistent with Israel's recent conduct, including its detention of Mr. Shaya this past summer by criminal law enforcement authorities when Mr. Shaya advised Israel that he planned to leave Israel to discuss with Plaintiffs' counsel the parameters of his voluntary deposition. *See* Ex.1, 6/1/14 Ltr. from L. Wolosky to J. Bellinger. If this is indeed Israel's position – that it simply will not allow Mr. Shaya to testify– it should save the Court's time and resources, and state as much explicitly. Such an admission would bring this issue to a close, avoiding the waste of valuable judicial resources through additional hearings, briefing and opinion writing.

In light of the foregoing and the ambiguous nature of Israel's requested relief, Plaintiffs respectfully request that the issue be addressed at a conference before the Court as soon as practicable.

Respectfully yours,

Lee Wolosky

Enclosures

cc: All Counsel

---

politically inexpedient. *See Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1090 (9th Cir. 2010) (*en banc*) (finding that "having reviewed the government's public and classified declarations," the government's invocation of the privilege accorded with the executive's conditions for invoking the privilege, as stated by the "Holder Memo") (citing Memorandum from the Attorney Gen. to the Heads of Executive Dep'ts and Agencies on Policies and Procedures Governing Invocation of the State Secrets Privilege (Sept. 23, 2009) (stating state secrets privilege shall not be invoked to "conceal violations of the law, inefficiency, or administrative error; [or] prevent embarrassment to a person, organization, or agency of the United States government")). This is of particular concern here, since no procedures have been presented to the Court describing how and under what circumstances the Government of Israel invokes a "state secrets privilege" in civil litigation, either in its own courts or in foreign courts. Moreover, to the extent Israel seeks to invoke the "foreign states secret privilege" concerning acts and information long post-dating Mr. Shaya's government service, Israel offers no basis for explaining how such acts and information untethered from his government service can be subject to a "foreign states secrets privilege" held by Israel, providing yet another reason to reject Israel's unprecedented request.